IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| ALTON RAY PICKENS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CV-98-B-3006-NW |
| MICHAEL BOGGAN, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This is a civil action pursuant to 42 U.S.C. § 1983 in which the plaintiff, Alton Ray Pickens (hereinafter "the plaintiff"), alleges that his constitutional rights were violated during his arrest in Florence, Alabama, and his subsequent incarceration in the Lauderdale County Detention Center. The *pro se* complaint was filed on December 3, 1998, naming as defendants Michael Boggan,[1] Lauderdale County Deputy Sheriff; Tracy Vanderford, Lauderdale County Deputy Sheriff; and Carmon Ray,[2] a Florence, Alabama police officer. The plaintiff filed an amended complaint on December 2, 1999, in which he names Lauderdale County, Alabama; the Florence City Police Department; and John Freeman, Lauderdale County Detention Center Administrator, as additional defendants. He seeks monetary damages and sanctions against the defendants.

On September 11, 2001, the court entered an Order for Special Report directing that copies of the complaint (doc. 1) and the amended complaint (doc. 11) filed in this action be

---

[1] The court notes that, in his complaint, the plaintiff incorrectly identified defendant Michael Boggan as Mike Boggins.

[2] The court notes that, in his complaint, the plaintiff incorrectly identified defendant Carmon Ray as Carman Ray.

forwarded to each of the named defendants and requesting that they file a special report responding to the factual allegations contained therein. On October 31, 2001, certain defendants, namely the Florence City Police Department and Carmon Ray, filed their special report attaching documents and affidavits. On November 29, 2001, defendants John Freeman, Michael Boggan, Tracy Vanderford, and Lauderdale County, Alabama, filed their special report, attaching various documents and declarations. By order of February 26, 2002, the parties were notified that the special reports would be construed as motions for summary judgment. (Doc. 30). The plaintiff was notified of the provisions and consequences of Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE. He filed a response in the form of copies of his medical records on March 13, 2002. (Doc. 31).

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp.*, 477 U.S. 317;

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. 317; *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citation omitted).

## **FACTS**

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On August 30, 1997, the plaintiff left a bar in Sheffield, Alabama. (Doc. 1). While he was driving home, a Sheffield police officer attempted to stop him for speeding. (*Id.*). When the plaintiff crossed a bridge and entered Lauderdale County, the Sheffield police officer ceased his pursuit. (*Id.*). Officers of the Florence Police Department and the Lauderdale County Sheriff's Department then began to pursue the plaintiff. While on duty as a police officer employed by the City of Florence, defendant Ray heard on his police radio that officers from Sheffield, Alabama, Florence, Alabama and Lauderdale County, Alabama, were trying to apprehend a suspect who

3

was running from them. (Doc. 22, Ray's Affidavit, p. 1). Ray listened to the conversation of the officers involved in the chase over the radio, but he never got involved in the chase. (*Id.*). Ray saw the plaintiff's car with several police cars in pursuit as they passed him. Defendants Boggan and Vanderford joined the other officers in pursuit of the plaintiff, who was driving at dangerously high speeds and disobeying traffic control devices while refusing to pull over. (Doc. 22, Boggan's Declaration, pp. 1 & 2; Vanderford's Declaration, p. 2). When the officers attempted to employ a rolling roadblock to pin the plaintiff in and bring his vehicle safely to a stop, the plaintiff rammed defendant Vanderford's patrol car with his vehicle. (Doc. 22, Boggan's Declaration, p. 2; Vanderford's Declaration, p. 2). Both vehicles ran off the road into a parking lot. The plaintiff's car then rolled backward and then pulled forward again, striking Vanderford's car. (*Id.*). The plaintiff's vehicle was eventually stopped by force. (Doc. 1). After the stop, unidentified officers pulled the plaintiff from his vehicle and forced him to the ground. (Doc. 1). He was disoriented and, as a result, could not identify or otherwise recognize all of the officers and deputies at the scene.

After the officers were able to bring the plaintiff's vehicle to a stop, Vanderford tried to get out of his patrol car. When Vanderford stepped out of the vehicle, he immediately fell to the ground due to excruciating back pain which was caused by the impact of the plaintiff's vehicle. (Doc. 22, Vanderford's Declaration, p. 2; Boggan's Declaration, p. 2). The plaintiff was struggling and resisting arrest. (Doc. 22, Boggan's Declaration, p. 2). Boggan got out of his car and checked on Vanderford. Boggan then went to assist the other officers in obtaining physical control of the plaintiff as he struggled and resisted arrest. (Doc. 22, Boggan's Declaration, p. 2). The plaintiff kicked Boggan twice in the leg as he tried to assist the other officers. The officers

also had trouble getting the plaintiff's arm out from underneath him. Boggan was fearful that the plaintiff might have a gun or some other weapon because he could not see the plaintiff's hand and because the plaintiff had just led several patrol cars on a high-speed chase through two counties and across numerous jurisdictions threatening the safety of the public, the officers involved, and himself. (Doc. 22, Boggan's Declaration, p. 2). While the plaintiff was continuing to struggle and kick, Boggan struck him once in the thigh with his foot. (Doc. 22, Boggan's Declaration, p. 2). The plaintiff was also sprayed with pepper spray. (Doc. 11, p. 4). The officers were able to handcuff the plaintiff and to subdue him although he continued to curse and verbally abuse the officers. (Doc. 22, Boggan's Declaration, p. 2).

    Defendant Ray had remained where he was until he heard on his police radio that the plaintiff had wrecked. (Doc. 22, Ray's Affidavit, pp. 1 & 2). Ray drove to the scene of the wreck. Upon arriving, Ray noted that the plaintiff was lying on the ground with his hands cuffed. Ray never touched the plaintiff and did not have any contact with him. (Doc. 22, Ray's Affidavit, p. 2). Lauderdale County Sheriff's Deputies placed the plaintiff in a county car and left the area. (Doc. 22, Ray's Affidavit, p. 2). The plaintiff was arrested by the Lauderdale County Sheriffs. (Doc. 22, Brewer's Affidavit, p. 1). The case was investigated by the Lauderdale County Sheriff's Department. The City of Florence's involvement in the incident was limited to assisting in the pursuit of the plaintiff's car. (Doc. 22, Ray's Affidavit, p. 2).

    Shortly after being taken into custody, the plaintiff was taken to the emergency room at Eliza Coffee Memorial Hospital in Florence. (Doc. 22, Boggan's Declaration, p. 2; Doc. 31, Plaintiff's Medical Records). Defendant Vanderford was also taken to the emergency room for treatment. (Doc. 22, Boggan's Declaration, pp. 2 & 3). The plaintiff was later arrested and

5

charged with various traffic offenses, including driving under the influence and speeding. (Doc. 11, p. 4). He was held in custody at the Lauderdale County Detention Center. (Doc. 11, p. 4). The City of Florence does not operate or have any control over the Lauderdale County Detention Center. (Doc. 22, Singleton's Affidavit, p. 1). Pursuant to a contract between the City of Florence and Lauderdale County, the county is in charge of the administration of the jail. (Doc. 22, Singleton's Affidavit, pp. 1 & 2; Singleton's Affidavit, Ex. A, Contract, p. 4).

Defendant Freeman was not employed as the jail administrator at the Lauderdale County Detention Center when the plaintiff was arrested and incarcerated on August 30, 1997. Freeman's last day as jail administrator was August 8, 1997. (Doc. 22, Freeman's Declaration, p. 1). Boggan, as a deputy sheriff, had no responsibility for and made no decisions regarding the medical treatment of inmates incarcerated at the Lauderdale County Detention Facility (Doc. 22, Boggan's Declaration, p. 3).

No record exists demonstrating that the plaintiff submitted a medical request form while he was incarcerated at the Lauderdale County Detention Center relating to any of the injuries he received during his arrest on August 30, 1997. (Doc. 22, Rickard's Declaration, p. 2).

## DISCUSSION

### Defendants Boggan, Vanderford, and Freeman in their Official Capacities

The plaintiff sued the individual defendants in their official capacities; however, as county deputy sheriffs, Boggan, Vanderford, and Freeman cannot be held liable in damages, in their official capacities, under the Eleventh Amendment. Such officers are therefore entitled to dismissal of any claims for damages brought against them in their official capacities as state officials. In *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989), the court held that the Eleventh

Amendment bars § 1983 lawsuits against county sheriffs, sued in their official capacities. Subsequently, the court held that Eleventh Amendment immunity also extends to deputy sheriffs because of their "traditional function under Alabama law as the sheriff's alter ego." *Carr v. City of Florence, Alabama*, 916 F.2d 1521 (11th Cir. 1990). To the extent the defendants are sued in their official capacities, Boggan, Vanderford, and Freeman are absolutely immune from damages liability in this action and are therefore entitled to summary judgment for any claims against them in their official capacities.

### Defendant John Freeman

In his amended complaint, the plaintiff names John Freeman as a defendant because he was "at all times herein mentioned acting as jail administrator as a representative of Lauderdale County." (Doc. 11, p. ). He claims that Freeman violated his constitutional rights because the Lauderdale County Detention Center failed to provide adequate medical attention to insure that prisoners housed in that facility are provided minimum standards of health care. In his sworn declaration, Freeman states that, although he had previously been employed by the Lauderdale County Sheriff's Department as the jail administrator at the Lauderdale County Detention Center, his last day as jail administrator was August 8, 1997. It is undisputed that in this action the plaintiff is complaining about constitutional violations which allegedly occurred during his arrest on August 30, 1997, and during his subsequent incarceration at the Lauderdale County Detention Center. Freeman states in his sworn undisputed declaration that he was not employed with the Lauderdale County Sheriff's Department when the events about which the plaintiff complains occurred, he had no involvement with and no personal knowledge of the arrest of the plaintiff on August 30, 1997, and he had no responsibility for or personal knowledge

of the medical care of the plaintiff while he was incarcerated at the Lauderdale County Detention Center following his arrest. (Doc. 22, Freeman Affidavit).

After a careful review of the complaint, the amended complaint, the response to the motions for summary judgment filed by the plaintiff, and the special reports filed by the defendants, it is the opinion of the court that there is no <u>genuine</u> issue of material fact in dispute regarding the plaintiff's claims that Freeman violated his constitutional rights. In determining what facts are undisputed, the court must begin with those specifically and expressly stated by the plaintiff. In addition to the facts stated by the plaintiff, the court must also take into account those facts stated by the defendants which are not disputed by the plaintiff. Facts submitted by a defendant and not expressly disputed by the plaintiff cannot be ignored because they too are "undisputed" facts. As the Supreme Court explained in *Celotex*, the ultimate burden is on the plaintiff to come forward with evidence supporting each element of his claim. Because the burden of proof in the lawsuit is on the plaintiff, he may not merely rest upon conclusory or vague pleadings, but must affirmatively rebut evidentiary matters offered by the defendants which, if left undisputed, show that the plaintiff is not entitled to recover in the action. In this case, the plaintiff has failed to rebut the specific facts set forth by Freeman in his declaration. It is undisputed that Freeman was no longer employed by the Lauderdale County Sheriff's Department when the events about which the plaintiff complains occurred. Therefore, Freeman is entitled to summary judgment.

### City of Florence, Alabama Police Department

In his amended complaint, the plaintiff names the City of Florence Police Department as a defendant. However, a city police department is not a legal entity subject to suit under 42

U.S.C. § 1983 and therefore is not a proper party defendant in this action. *See Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *Shelby v. City of Atlanta*, 578 F. Supp. 1368, 1370 (N.D. Ga. 1984), *Ragusa v. Streator Police Department*, 530 F. Supp. 814, 815 n.1 (N.D. Ill. 1981). Accordingly, summary judgment is due to be granted the Florence Police Department.

### Defendants Carmon Ray in his Official Capacity, the City of Florence, and Lauderdale County

The plaintiff has sued defendant Carmon Ray in his official capacity as a police officer for the City of Florence, Alabama. It is well established that an action against a city police officer in his official capacity is an action against the city. *See*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1984). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.[3] Therefore, the plaintiff's action against Ray in his official capacity is really an action against the City of Florence, Alabama, which like Lauderdale County is already a defendant in this action.

The plaintiff has failed to state a claim against either the City of Florence or Lauderdale County. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local bodies could be treated as persons for purposes of a § 1983 action. In addition, the Court held that local bodies could be sued directly for constitutional violations caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 694. The

---

[3] The court notes that the special report filed in this action on October 31, 2001 (document number 18), was filed on behalf of the City of Florence. It is clear, therefore, that the City of Florence received notice of this action, had an opportunity to respond, and did in fact respond to the plaintiff's claims.

plaintiff fails to allege in either his complaint or his amended complaint any facts to indicate that he suffered the alleged constitutional deprivation due to a policy statement, ordinance, regulation, or decision adopted by either the City of Florence or Lauderdale County. Thus, the plaintiff has failed to state a claim against either the city or the county. The City of Florence and Lauderdale County are entitled to summary judgment.

### Excessive Force Claims Against Defendants Boggan, Vanderford and Ray in their Individual Capacities

The plaintiff claims that defendants Boggan, Vanderford, and Ray assaulted him and used excessive force upon him during his arrest on August 30, 1997. In determining whether excessive force was used by an arresting officer, a court must apply a Fourth Amendment analysis, concentrating on whether the challenged use of force was reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The standard requires a court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. This objective test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In his sworn and undisputed affidavit, Ray states that he heard on his police radio that officers from Sheffield, Alabama, the City of Florence, and Lauderdale County were trying to

apprehend a suspect who was running from them. He states that he listened to the chase on his radio, but he never got involved in the chase. (Doc. 22, Ray's Affidavit, p. 1). He further states that he remained where he was until he heard on his police radio that the plaintiff had wrecked. (Doc. 22, Ray's Affidavit, pp. 1 & 2). Ray states that he then drove to the scene of the wreck and that upon his arrival, the plaintiff was lying on the ground with his hands cuffed. Finally, Ray states that he never touched the plaintiff and did not have any contact with him. (Doc. 22, Ray's Affidavit, p. 2).

Although given the opportunity to respond to Ray's sworn affidavit, the plaintiff failed to rebut the specific facts set forth therein. As previously noted, in determining what facts are undisputed, the court must begin with those specifically and expressly stated by the plaintiff. In addition to the facts stated by the non-moving the plaintiff, the court must also take into account those facts stated by the defendants which are not disputed by the plaintiff. Because the burden of proof in the lawsuit is on the plaintiff, he may not merely rest upon conclusory or vague pleadings, but must affirmatively rebut evidentiary matters offered by the defendants which, if left undisputed, show that he is not entitled to recover in the action. Further, the court notes that the plaintiff admits in his complaint that he was disoriented at the time of his arrest and, as a result, could not count or recognize all of the officers and deputies at the scene. (Doc. 1). It is important to note also that, in his complaint and amended complaint, the plaintiff fails to make any specific claims against Ray. He simply states that "officers from the Lauderdale County Sheriff's Department and the Florence Police Department" assaulted him and used excessive force against him. Ray is thus entitled to summary judgment on the plaintiff's claim that he assaulted the plaintiff and used excessive force upon him during his arrest on August 30, 1997.

11

In his sworn and undisputed declaration, Vanderford states that, when he and other officers attempted to employ a rolling roadblock to pin the plaintiff in and bring his vehicle safely to a stop, the plaintiff rammed his patrol car with his vehicle. (Doc. 22, Vanderford's Declaration, p. 2). It is undisputed that both vehicles ran off the road into a parking lot and that the plaintiff rolled his car backward and then pulled it forward striking Vanderford's car. (Doc. 22, Boggan's Declaration, p. 2). It is also undisputed that after the officers were able to bring the plaintiff's vehicle to a stop, Vanderford tried to get out of his patrol car and immediately fell to the ground due to excruciating back pain which was caused by the impact of the plaintiff's vehicle. (Doc. 22, Vanderford's Declaration, p. 2; Boggan's Declaration, p. 2). Vanderford states in his declaration that, as a result, he was not personally involved in taking the plaintiff into custody during his arrest. The plaintiff has failed to dispute any of the facts presented in the sworn declarations of the defendants, therefore, Vanderford is entitled to summary judgment on the plaintiff's claim that he assaulted him and used excessive force against him during his arrest on August 30, 1997.

In his sworn declaration, Boggan states that, when the officers were finally able to stop the plaintiff's vehicle and to remove him therefrom, the plaintiff was struggling and resisting arrest. (Doc. 22, Boggan's Declaration, p. 2). He states that he got out of his car and checked on Vanderford before going to assist the other officers in obtaining physical control of the plaintiff as he struggled and resisted arrest. (Doc. 22, Boggan's Declaration, p. 2). Boggan states further in his sworn and undisputed declaration that the plaintiff kicked him twice in the leg as he tried to assist. He states that the officers also had trouble getting the plaintiff's arm out from underneath him and that he (Boggan) was fearful of whether the plaintiff might have a gun or

12

some other weapon, because he could not see the plaintiff's hand and because the plaintiff had just led several patrol cars on a high-speed chase through two counties and across numerous jurisdictions threatening the safety of the public, the officers involved and himself. (Doc. 22, Boggan's Declaration, p. 2). Boggan admits that, while the plaintiff was continuing to struggle and kick, he struck the plaintiff once in the thigh with his foot. (Doc. 22, Boggan's Declaration, p. 2). The plaintiff states that he was pulled from his vehicle, thrown to the ground, sprayed with pepper spray, and held and beaten by officers whom he cannot identify due to his disorientation.

As is stated above, the court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. This objective test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The facts and circumstances of the instant case show that, before his vehicle was stopped, the plaintiff had led several patrol cars on a high-speed chase through two counties and across numerous jurisdictions, thereby threatening the safety of the public, the police officers involved, and himself. The plaintiff posed a significant and serious threat to the safety of the officers and others. It is also clear that once he was removed from his vehicle, the plaintiff posed a threat to the officers as is demonstrated by the evidence that he struggled and resisted arrest, that the officers had trouble getting his arm out from underneath him, and that the officers were fearful of whether he might have a gun or some other weapon. Further, it is undisputed that the plaintiff was actively resisting arrest and had attempted to evade arrest.

Considering all of the circumstances, the court concludes that no reasonable jury could find that the actions of the officers in subduing the plaintiff in this case violated the applicable standard. *See Tofano v. Reidel*, 61 F. Supp. 2d 289, 305-06 (D.N.J. 1999); *Gainor v. Douglas County*, 59 F. Supp. 2d 1259, 1287 (N.D. Ga. 1998). Accordingly, the court concludes as a matter of law that the officers did not use any more force against the plaintiff than was reasonably necessary to effect the arrest and that he has failed to establish a violation of the Fourth Amendment. Boggan is entitled to summary judgment on the plaintiff's claim that he assaulted him and used excessive force upon him during his arrest on August 30, 1997.

### Denial of Medical Treatment

The plaintiff's final claim is that the defendants denied him medical attention for the injuries he suffered during his arrest on August 30, 1997, while he was incarcerated in the Lauderdale County Detention Center. The Due Process Clause of the Fourteenth Amendment requires a state to provide a pretrial detainee "with some minimal level" of "such basic necessities as food, living space, and medical care." *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). The due process rights of a pretrial detainee "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983). In *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), "the Supreme Court held that deliberate indifference to [a convicted prisoner's] serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). A two-part analysis is employed in determining whether an Eighth Amendment violation has occurred. "First, we must evaluate whether there was evidence

of a serious medical need; if so, we must then consider whether [the defendants] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is objective; the second inquiry is subjective. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994).

"'[A] "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)). "[T]he medical need of the prisoner need not be life threatening" to be considered "serious." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988).

The second part of the inquiry -- whether the response of the defendant amounted to deliberate indifference -- is itself a two-part determination. A defendant may be held liable for an Eighth Amendment violation only if he had "knowledge of the [plaintiff's] particular medical condition," *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1191 (emphasis omitted), *and* he acted intentionally or recklessly to deny or to delay access to medical care" or to interfere "with the treatment once prescribed," *Estelle v. Gamble*, 429 U.S. at 104-05. *See also Mandel v. Doe*, 888 F.2d at 788. *See generally Farmer v. Brennan*, 511 U.S. 825, 833-842 (1994). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Mere negligence or medical malpractice" on the part of the defendant is not sufficient to support an Eighth Amendment claim. *Mandel v. Doe*, 888 F.2d at 787-88. *See also Barfield v. Brierton*, 883 F.2d 923, 939 (11th Cir. 1989). Therefore, an

15

accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

In his sworn and undisputed affidavit, Ray states that he never touched the plaintiff and that he did not have any contact with him. He states that, when the plaintiff was apprehended, county officers placed the plaintiff in a county car and left the area. In his sworn and undisputed affidavit, Rick Lamar Singleton, the Chief of Police of the Florence City Police Department, states that the City of Florence does not operate nor does it have any control over operations of the Lauderdale County Jail. He states further in his sworn affidavit that in 1993, the City of Florence and Lauderdale County entered into a contract (which is attached to his affidavit as Exhibit A) which states that administration of the Lauderdale County Detention Center lies solely with Lauderdale County and that the administrator is to report directly to the sheriff of Lauderdale County and the Lauderdale County Commission. (Doc. 18, Singleton Affidavit).

In their sworn and undisputed declarations, Boggan and Vanderford state that, as deputy sheriffs, they do not have any responsibility for and make no decisions regarding the medical treatment of inmates incarcerated at the Lauderdale County Detention Center. They state that, as

16

a result, they had no personal involvement with or personal knowledge of the medical treatment provided to the plaintiff while he was incarcerated at the Lauderdale County Detention Center.

The plaintiff does not dispute the facts presented in the sworn affidavit of defendant Ray nor does he dispute the facts presented in the sworn declarations of Boggan, Vanderford and Singleton. It is clear from the undisputed facts that defendant Ray, a Florence City police officer, and defendants Boggan and Vanderford, Lauderdale County sheriff's deputies, had no control over whether or not the plaintiff received medical attention while he was incarcerated at the Lauderdale County Detention Center. Since the defendants had no control over whether or not the plaintiff received medical attention while he was incarcerated at the Lauderdale County Detention Center, Ray, Boggan, and Vanderford could not have been deliberately indifferent to the plaintiff's need for medical attention. Ray, Boggan, and Vanderford are entitled to summary judgment with respect to the plaintiff's claim that they denied the plaintiff medical treatment while he was incarcerated in the Lauderdale County Detention Center.

The court notes further that it is undisputed that no record exists of the plaintiff submitting a medical request form while incarcerated at the Lauderdale County Detention Center relating to any injuries received during his arrest on August 30, 1997. Further, the plaintiff's evidence reveals that he did in fact receive medical attention following his arrest on August 30, 1997. The plaintiff has submitted the medical records from the Eliza Coffee Memorial Hospital where he was taken following his arrest on August 30, 1997. (Doc. 31). According to the medical records submitted by the plaintiff, he was admitted to the Eliza Coffee Memorial Hospital on August 30, 1997, at 11:14 p.m. The undisputed evidence submitted by the plaintiff reflects that he was involved in an auto accident approximately 30 minutes prior to arrival at the

hospital, that he was driving, and that he was not wearing a seatbelt. (Doc. 31, p. 3). The medical records state that upon his arrival at the hospital, he claimed that he had hit his head during an automobile accident caused when he ran off the road trying to avoid a police car. (*Id.* at 5). It is noted that the plaintiff's medical records reflect that he was ambulatory upon arrival and alert during his exam. (*Id.* at 3). He complained of pain in his face, ankle, foot, and jaw. He also stated that he had been assaulted. (*Id.*). Contrary to the plaintiff's claim in his amended complaint that he had been beaten unconscious, the medical records which he submitted as evidence reflect that the injury to his head happened "at the same time" with no loss of consciousness. There was no dizziness, nausea, vomiting, blurred vision, confusion, seizure activity, or neck pain. (*Id.*). According to the plaintiff's evidence, he was taken to x-ray, after which his facial lacerations were cleaned and his left foot and ankle were wrapped with ace bandages. He was then "discharged home accompanied by police." (*Id.* at 6). The plaintiff was given prescriptions for Flexeril, Darvocet, and Keflex and was advised to follow up with his personal physician in 5 to 7 days. He was advised to return to the emergency room if his condition worsened or as needed. As previously noted, no record exists of the plaintiff submitting a medical request form while incarcerated at the Lauderdale County Detention Center relating to any injuries received during his arrest on August 30, 1997. There is no allegation that any deputy accompanying the plaintiff was advised that the plaintiff should follow up with his personal physician in 5 to 7 days.

    Additional evidence submitted by the plaintiff further belies his claim. He has submitted copies of medical records from the Eliza Coffee Memorial Hospital dated September 10, 1997. Accordingly, to the medical records, he was brought to the hospital from the Lauderdale County

Detention Center after he complained of left rib pain on September 10, 1997. According to the records, his injury was caused during an altercation with police when he was arrested approximately a week and a half prior to September 10, 1997. Thus, the plaintiff's evidence is contrary to his claim that he was denied medical treatment for his injuries while incarcerated in the Lauderdale County Detention Center. Summary judgment is due to be granted the defendants.

## CONCLUSION

The court expressly finds that there are no genuine issues of material fact and that defendants Michael Boggan, Tracy Vanderford, Carmon Ray, the City of Florence, Lauderdale County, the City of Florence Police Department, and John Freeman are entitled to judgment as a matter of law. Accordingly, for the reasons stated above, defendants Michael Boggan, Tracy Vanderford, Carmon Ray, the City of Florence, Lauderdale County, the City of Florence Police Department, and John Freeman's motions for summary judgment are due to be granted and this action against defendants Michael Boggan, Tracy Vanderford, Carmon Ray, the City of Florence, Lauderdale County, the City of Florence Police Department, and John Freeman is due to be dismissed with prejudice.

A separate final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

**DONE**, this 29th day of March, 2002.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE